

**SO ORDERED,**

*Selene D. Maddox*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

**IN RE:**

| | |
|---|---|
| **HALDEN RAY LIVINGSTON AND** | **CASE NO.: 17-14400** |
| **DAWN DENISE LIVINGSTON** | |
| **DEBTOR(S).** | **CHAPTER 13** |

**MEMORANDUM OPINION AND ORDER DENYING CITIZENS NATIONAL BANK'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND FOR ABANDONMENT [DKT. #83]**

**THIS CAUSE** comes before the Court on the *Motion for Relief from Automatic Stay and for Abandonment* [Dkt. #83] filed by Creditor Citizens Bank ("Citizens") and the Debtors' Response [Dkt. #88]. The Court has heard oral arguments and reviewed the letter briefs outlining the parties' respective positions and authority and has taken the matter under advisement. The Court is now prepared to rule.

**I. JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

§ 157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 11 U.S.C. § 157(b)(2)(A)[1] (matters concerning the administration of the estate) and (G) (motions to terminate, annul, or modify the automatic stay).

## II. FACTS AND PROCEDURAL HISTORY

The facts of this matter are largely undisputed. The Debtors are Halden and Dawn Livingston ("the Livingstons"), a married couple presently in the above-styled Chapter 13 bankruptcy. Citizens is a secured creditor and movant in the instant matter. The petition was filed on November 17, 2017, and the Livingstons' Second Amended Plan [Dkt # 68] was confirmed on February 15, 2019. Among the Livingstons' assets is a principal residence located at 132 Red Oak Lane, Columbus, Mississippi ("the Residence"), which Schedule A values at $230,000.00. The Residence is listed as an exempt asset on Schedule C up to the appropriate statutory limit found in Miss. Code Ann. § 85-3-21. Schedule D lists two secured debts that encumber the Residence: (1) a first mortgage held by Regions National Bank ("Regions") in the amount of $140,000.00 and (2) a second mortgage held by Citizens in the amount of $22,645.44.

Subsequently, Regions filed a proof of claim (POC #6) in the amount of $139,263.76 for its first mortgage. Citizens filed three proofs of claim. One was for the second mortgage on the Residence (POC #14) in the amount of $25,004.82, while the other two proofs of claim were for mortgages on other properties, which the Debtors later surrendered to Citizens.

The Livingston's first Plan was filed on December 14, 2017 [Dkt. #18]. In it, they proposed to pay Regions directly and to pay Citizens through the Plan in the total amount of $23,000.00 at

---

[1] Except where stated otherwise, all subsequent statutory references will be to Title 11 of the U.S. Code.

4.75%. The First Amended Plan was filed on March 21, 2018 [Dkt. #27] and proposed to treat Regions and Citizens under the same terms as the initial Plan.

On November 15, 2018, the Livingstons filed their Second Amended Plan [Dkt. #68] that proposed to pay Regions direct and in full. The Citizens mortgage, however, was not directly mentioned anywhere in the plan, although the Plan proposed to pay 100% of timely-filed unsecured claims. Notably, the cover of the Second Amended Plan specifically identified Section 3.1(c) ("*Mortgage claims to be paid in full over the plan term*") as one of the sections which had been amended.[2] Citizens received proper notice of the plan but never filed any objection to either the Second Amended Plan or its treatment of Citizens' lien on the Residence.

On November 20, 2018, the Trustee filed an Objection to Confirmation [Dkt. #70] that listed, among other grounds for objection, that the Plan was unclear as to whether the Residence was to be abandoned along with the two abandoned properties referred to above. On February 11, 2019, the Court entered an Agreed Order [Dkt. #78] which resolved the Trustee's objections. But the order was silent as to the treatment of the Residence.

At no point between the filing of the Second Amended Plan and its confirmation did Citizens file any objection to its terms.[3] Nevertheless, on February 27, 2019, twelve days after confirmation, Citizens filed the instant *Motion for Relief from Automatic Stay and For Abandonment* [Dkt. #83]. To summarize movant's arguments, Citizens acknowledges that the Second Amended Plan provides only for direct payment to Regions and does not provide for the

---

[2] Although there is no proof, other than the Second Amended Plan itself, to show that the omission of Citizens' second mortgage claim was intentional rather than a mistake, this Court will not tolerate any bad faith litigation tactics. If the Court were to find existence of such tactics, it may subject the offending party to sanctions under Federal Rules of Bankruptcy Procedure 9011.

[3] Under § 502(a), a proof of claim is deemed allowed when filed absent a timely objection. In this case, the Livingstons did not object to POC #14. Therefore, Citizens' claim was deemed allowed.

junior lien. The Motion also notes that the Residence is valued at $230,000.00 by the Livingstons but states that its own appraisal values it at $234,000.00. The Residence is encumbered by a $140,000.00 senior lien held by Regions and a $23,000.00 junior lien held by Citizens. Oddly, the Motion asserts that there is no equity in the Residence even though there appears to be at least $71,000.00 in equity based on Citizens' own figures. Regardless, Citizens asked the Court to lift the stay so that it could foreclose on its junior lien.

The Livingstons admit to all the allegations in the Motion except as follows: First, the Livingstons argue the Plan has been confirmed and is non-appealable, and by its terms, it does not provide for a second mortgage claim by Citizens. Consequently, while Citizens could have had an unsecured claim, its secured claim has been "eviscerated" by the confirmation of the Plan. Second, the Livingstons assert that the listed value of the Residence at $230,000.00 was "improvident" and that the actual value is closer to the amount owed to Regions. In other words, the Livingstons now aver that the value of the Residence is about $90,000.00 less than was reported in the filings.

While the Livingstons do not explicitly argue that the Citizens mortgage was subjected to lien stripping, that seems to be the implication. Even though the plan did not propose to strip the lien and the Debtors have not filed any pleading seeking such an outcome, their arguments before the Court assert that the loan was "eviscerated" simply by virtue of Citizens' failure to timely object to its omission from the confirmed plan.

The Court heard oral arguments on April 9, 2019, and later directed the parties to submit letter briefs which have been received and reviewed by the Court. The matter is now ripe for consideration.

### III. DISCUSSION

**A. The Res Judicata Effect of Plan Confirmation**

As the Livingstons note, it is well established that res judicata applies after a chapter 13 plan has been confirmed.

> Under section 1327(a), the order of confirmation fixes the rights of all parties and binds them to the terms of the plan. Just as creditors are bound by the treatment afforded their claims, the debtor is likewise bound by the same terms. Upon confirmation, res judicata bars the assertion of any cause of action or objection which was raised, or could have been raised, prior to confirmation. The only rights which may be asserted by a party after confirmation are those provided for in the plan.

*In re Clark*, 172 B.R. 701, 703 (Bankr. S.D. Ga. 1994) (citations omitted).

Likewise, the Bankruptcy Code clearly states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). This provision of the Bankruptcy Code bars efforts seeking post-confirmation relief from the automatic stay based on grounds that arose pre-confirmation. *Ellis v. Parr (In re Ellis),* 60 B.R. 432, 434 (9th Cir. BAP 1985). Once confirmation occurs, the creditor may not raise any issue that it could have raised before confirmation. *In re Barry*, 201 B.R. 820, 823 (C.D. Cal. 1996).

Indeed, the Supreme Court recently held this to be true even in circumstances where a plan was confirmed erroneously despite the inclusion of provisions that are contrary to the Bankruptcy Code but to which no objection was made. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 274–75 (2010). In *Espinosa*, the Court considered a case where a Chapter 13 debtor submitted a plan which proposed to pay only the principal on his student loan debt, with the accrued interest being discharged. *Espinosa*, 559 U.S. at 265. Prior to confirmation, the student loan provider did

not object to the proposed plan despite its improper provision, did not object to the lack of any determination of undue hardship (as required by the Code), did not object to Espinosa's failure to initiate an adversary proceeding to determine the dischargeability of that part of the student loan debt, and, finally, did not appeal the confirmation of the plan. *Id.* Instead, the provider waited until after Espinosa had obtained a discharge to pursue recovery of the unpaid interest and, when blocked by the bankruptcy court, attacked the validity of the confirmation order it, eventually appealing to the Supreme Court. *Id.* at 266. Justice Thomas, writing for a unanimous Court, held for Espinosa:

> Given the Code's clear and self-executing requirement for an undue hardship determination, the Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was a legal error. See Part III, infra. But the order remains enforceable and binding on United because United had notice of the error and failed to object or timely appeal.

*Id.* at 275.

More recently, the Fifth Circuit also addressed the issue of res judicata as applicable to confirmation orders:

> [T]he bankruptcy court's approval of the Plan and the ensuing confirmation order constitute a final judgment that may not be collaterally attacked.
>
> In *Travelers Indemnity Co. v. Bailey*, the Supreme Court held that final bankruptcy orders (i.e., orders that are affirmed upon direct review, or, as in this case, not appealed or contested) become "res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." The Court explicitly held that this principle applies "whether or not [the orders were] proper exercises of bankruptcy court jurisdiction and power" at the time they became final.

*Matter of Linn Energy, L.L.C.*, No. 18-40575, 2019 WL 2520074, at *3 (5th Cir. June 19, 2019) (internal citations omitted).

In light of this authority, Citizens' argument that the automatic stay should be lifted because the Livingstons' confirmed plan makes no provision for Citizens' lien against the Residence is without merit. The Second Amended Plan was filed and noticed to Citizens through its counsel pre-confirmation. Citizens' window to raise an objection to the Plan's treatment (or rather, its non-treatment) of the junior lien closed when the Confirmation Order was entered. Accordingly, the *Motion for Relief from Stay and for Abandonment* is denied.

## B. The Status of Citizens' Lien

In their letter brief, the Livingstons suggest that Citizens' junior lien has been voided because of Citizens' failure to object to its treatment in the confirmed plan. While that issue is not directly before it, the Court believes that the status of the lien should be addressed in this opinion. Otherwise, any perceived ambiguity will simply lead to further superfluous motion practice by the parties.

The Livingstons assert that because the confirmed plan does not provide for treatment of Citizens' lien, that lien has been "eviscerated," and Citizens' only basis for recovery (if that) is as an unsecured creditor. Essentially, the Livingstons wish the Court to view the omission of Citizens' junior lien from the confirmed plan as a de facto stripping of Citizens' lien. In support of this theory, the Livingstons rely heavily on *In re Shank*, 569 B.R. 238 (Bankr. S.D. Tex. 2017).

In *Shank*, the Debtors' Schedules listed Montanaro Investments ("Montanaro") as a secured creditor holding a first mortgage on the Debtor's Homestead in the amount of $23,320.00. *Shank*, 569 B.R. at 242. The plan proposed to pay that amount at 5.25% interest over 54 months. *Id.* Additionally, the plan stated that "[s]ubject to disposition of a timely filed motion to avoid a lien under § 522, or a complaint to determine the validity of a lien filed under Fed. R. Bankr. P. 7001, each secured creditor shall retain the lien securing its claim." *Id.* Finally, the plan provided

that "[t]he lien shall be enforceable to secure payment of the claim the lien secures, as that claim may be modified by the plan." *Id.*

Although Montanaro had notice of the proposed plan, it did not object to the plan's proposed treatment, and the plan was later confirmed with a proviso that "each secured creditor shall retain the lien existing prior to the commencement of the case to secure payment of the allowed amount of its claim until the Debtor is discharged." *Id.* at 243.

The *Shank* Court addressed the issue of lien avoidance attempted by means of a Chapter 13 plan provision, noting a confirmed plan "may void liens not specifically preserved." *Id. citing In re Ahern Enters. Inc.*, 507 F.3d 817, 822 (5th Cir. 2007).

> In the context of a chapter 11 bankruptcy, the Fifth Circuit determined that for a lien to be voided "(1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien."

*Id.* Although *Ahern* was a Chapter 11 case interpreting when and how a lien could be avoided under § 1141(c), the *Shank* Court analyzed the Chapter 13 case before it under the four-part *Ahern* test, with emphasis on the question of whether the creditor in that case had "participate[d]" in the reorganization. *Id. See also In re S. White Transp., Inc.*, 725 F.3d 494, 498 (5th Cir. 2013)(holding that meeting "participation" prong of *Ahern* test requires more than just receipt of proper notice by Chapter 11 creditor).

The Court is not persuaded that the *Ahern* test is applicable to the instant case. In a Chapter 11 case, plans are generally constructed with greater input from secured creditors than in Chapter 13 plans. Also, Chapter 11 plans are only confirmed after an individualized confirmation hearing, whereas Chapter 13 plans may be confirmed without a hearing if all objections are resolved. But even if *Ahern* did apply, the Court still concludes that Citizens' lien would pass the test because of the Livingstons' failure to properly deal with the lien through the confirmed plan.

The Fourth Circuit has addressed this issue in *Cen-Pen Corp. v. Hanson*:

> As a general matter, a plan "provides for" a claim or interest when it acknowledges the claim or interest and makes explicit provision for its treatment. If a Chapter 13 plan does not address a creditor's lien (for instance, by expressly providing for payment of an allowed secured claim and cancellation of the lien), that lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding, as discussed above. Several courts have held that a plan "provides for" the lien held by a secured creditor only when it provides for payment to the creditor in an amount equal to its security.

58 F.3d 89, 94 (4th Cir. 1995)(citations omitted).

More importantly, the Fifth Circuit has also spoken to this issue, albeit in the context of statutory liens. *In re Simmons*, 765 F.2d 547 (5th Cir. 1985). There, Savell (a plumber who did work for the debtor, Simmons) filed for a construction lien against the debtor's home. *Simmons*, 765 F.2d at 549. Simmons subsequently filed for Chapter 7 bankruptcy (later converting to Chapter 13), and Savell submitted a proof of claim asserting the construction lien as a secured debt. *Id.* The proposed plan, however, listed Savell's debt as unsecured, and that plan was eventually confirmed without objection from the creditor. *Id.* at 550. Later, after selling his home, Simmons filed an adversary proceeding that sought to cancel Savell's asserted debt. *Id.* The bankruptcy court held that § 545 does not describe a situation when a lien "can be avoided because the debt is included in the plan and the creditor fails to object." *Id.* at 550.

Simmons appealed to the district court and then to the Fifth Circuit, arguing that Savell's failure to properly object pre-confirmation to the plan's treatment of his lien meant that the confirmation order "vested the homestead in him free of the lien." *Id.* at 551. The Fifth Circuit rejected Simmons' arguments, holding that the filing of a valid proof of claim "constitutes prima facie evidence of the validity and amount of the claim" and that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." *Id.* at 551-52 (quoting 11 U.S.C. § 502(a) and Fed R. Bankr. P. 3001(f)).

> The purpose of filing an objection is to join issue in a contested matter, thereby placing the parties on notice that litigation is required to resolve an actual dispute between the parties. See Bankr. R. 9014 advisory committee note. An objection to a proof of claim filed in accordance with Rules 3007, 9004, and 9014 clearly places in issue the allowance or disallowance of that claim as filed. The parties are put on notice that the objection will have to be resolved before a final determination is made as to the allowance or disallowance of the claim. In contrast, the filing of a Chapter 13 plan does not initiate a contested matter. When a plan is filed with the petition, as permitted under Rule 3015, it is unlikely at that time that creditors have even contemplated filing proofs of claims. When the creditor files a proof of claim subsequent to the filing of the plan, the Code and the Rules clearly impose the burden of placing the claim in dispute on any party in interest desiring to do so by Means of filing an objection.

*Id.* at 552.

The Fifth Circuit ultimately affirmed the bankruptcy court and the district court, holding that a lien passes through a bankruptcy intact unless either the debtor or the trustee takes steps to avoid it. *Id.* Even though Savell received notice of the proposed plan and did not timely object, it was Simmons' own failure to object to Savell's proof of claim that ensured the lien survived the bankruptcy. *Id.*

> It would be anomalous indeed were we to permit Simmons a windfall for his mischaracterization of Savell's claim in the plan as unsecured. *Cf. Whiteford Plastics Co. v. Chase National Bank*, 179 F.2d 582 (2d Cir.1950). It is clear that Savell's claim should have been deemed an allowed secured claim at the time of confirmation and treated as such in the plan if the plan was to be confirmed. That did not happen. It is also apparent that Savell should have objected to confirmation, and, had his objection not been sustained, he should have appealed the order of confirmation. But that also did not happen. Nevertheless, Savell's failure to interpose an objection to the plan or to appeal the confirmation order should not now be permitted to justify avoidance of a lien securing a claim that was originally deemed an allowed secured claim as a result of Simmons' failure to object to Savell's timely filed proof of secured claim.

Id. at 555–56.

Setting aside the issue of whether Citizens "participated" sufficiently to satisfy *Ahern*, the Court interprets the second prong of the four-part test (i.e. that the property that is subject to the lien must be dealt with by the plan) to mean that the plan must make some explicit provision that

puts the lienholder on notice of the debtor's intention to strip the lien. Any such efforts to strip a lien from the debtors' collateral must be affirmative and overt, and the Court will not read the omission of a lienholder from the plan, without more on the part of the debtor, as sufficient to "eviscerate" or otherwise destroy Citizens' lien on the Residence.

This Court is of the opinion that the best mechanism for stripping a lien such as a second mortgage is through an adversary proceeding. This policy is consistent with Rule 7001(2) which requires an adversary proceeding if a party wishes "to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). That said, the Court is aware that there is a split in the circuits and that other bankruptcy courts have held that an adversary proceeding is not required for lien stripping.

In *In re Bennett,* a bankruptcy judge in Kentucky noted that "[t]here are at least four methods in which the liens in question could be stripped off: 1) through plan provisions; 2) through an adversary proceeding; 3) through a claim objection; and 4) through motion practice." 312 B.R. 843, 846 (Bankr. W.D. Ky. 2004). After discussion of the four methods, the *Bennett* Court chose motion practice as its preferred mechanism.

At this juncture, the Court will not conclusively adopt any particular mechanism as its preferred means for debtors to accomplish lien stripping. But the Court will *not* approve the stripping of a lien by way of any negative implication arising from the debtor simply not providing for the creditor at all. *See Simmons*, 765 F.2d at 553 ("The Code and the Rules do not envision the use of a plan as a means for objecting to proofs of claims."); *County of Ventura Tax Collector v. Brawders (In re Brawders),* 503 F.3d 856, 867 (9th Cir. 2007) ("Absent some action by the representative of the bankruptcy state, liens ordinarily pass through bankruptcy unaffected . . . ."); *Work v. County of Douglas (In re Work*), 58 B.R. 868, 871 (Bankr. D. Or. 1986) ("Because

Plaintiffs [ ] made no provision for the Defendant's lien in their plan, the residence which vested in Plaintiffs after confirmation remains subject to Douglas County's lien.")

## IV.  CONCLUSION

Based on the foregoing analysis and authority, it is hereby **ORDERED** that the *Motion Of Citizens National Bank For Relief From Automatic Stay And For Abandonment* [Dkt. #83] is hereby **DENIED**.  And under this confirmed plan, upon entry of discharge, the lien of Citizens Bank shall pass through the bankruptcy unaffected.

##END OF ORDER##